UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TROY COVINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:23 CV 1581 RWS |
| ) | |
| BI-STATE DEVELOPMENT AGENCY ) | |
| OF THE MISSOURI-ILLINOIS ) | |
| METROPOLITAN DISTRICT, ) | |
| ) | |
| Defendant. ) | |

## **AMENDED MEMORANDUM AND ORDER**

This case arises out of an employment termination dispute between Plaintiff Troy Covington and Defendant Bi-State Development Agency of the Missouri-Illinois Metropolitan District. The case is now before me on Bi-State's motion for summary judgment on Ms. Covington's claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and Section 510 of the Employee Retirement Income Security Act, 29 U.S.C. § 1140. For the reasons discussed below, Bi-State's motion will be granted.

# **BACKGROUND**[1]

Defendant Bi-State Development Agency is an interstate compact between Missouri and Illinois. Among other things, Bi-State operates Metro Transit, the main public transit operator in the Greater St. Louis Area.

In November 2018, Bi-State hired Plaintiff Troy Covington as a Transit Service Manager – Dispatcher. Upon employment, Ms. Covington was eligible to participate in Bi-State's benefit plans, which include medical, dental, vision, life, and disability insurance; a 401(k) program; and paid time off ("PTO") at the rate of 13.33 hours per month.[2]

The job description for Ms. Covington's position states that "[r]egular, reliable and predictable attendance is *required*." ECF No. 30-8 (emphasis in original). In addition, Bi-State's company-wide attendance guidelines emphasize that attendance directly affects the level of service and support provided to customers and operators. *See* ECF No. 30-9 (signed by Ms. Covington). Bi-State also has a leave policy, which provides that:

 (a) an employee absent due to illness for three or more consecutive workdays may be asked to provide medical documentation;

---

[1] The information in this section is taken from the parties' statements of uncontroverted material facts, ECF Nos. 30, 34 & 36, and attached exhibits to the extent they are not specifically controverted by the opposing party as required by Local Rule 7–4.01(E).

[2] Bi-State previously offered a Salaried Retirement Pension Plan, which was closed to new participants effective July 1, 2013. It was replaced with an 401(k) Retirement Savings Program, under which Bi-State contributes an amount equal to 4% of the employee's salary and matches 50% of the first 5% contributed by the employee if they choose.

2

    (b) an employee requesting PTO for more than five consecutive workdays due to illness must apply for family and medical leave ("FMLA");

    (c) an employee must call their supervisor every day they are absent (unless excused by the supervisor for a specific duration); and

    (d) Bi-State may periodically inquire as to the employee's intent to return to work.

*See* ECF No. 30-6 at 13, 23–24.

Ms. Covington has been diagnosed with a gastrointestinal condition called "dumping syndrome." Symptoms include fatigue, acute gastrointestinal distress, and frequent bathroom needs. She has also been diagnosed with postprandial diarrhea, nausea, insomnia, hypertension, and colitis. Before her employment with Bi-State, Ms. Covington underwent a total colectomy. In August 2021, she underwent a procedure called a Nissen Fundoplication for stomach and hernia repair.

On September 1, 2022, Ms. Covington provided an ADA Accommodation Form to Bi-State, which was completed by her physician. *See* ECF No. 30-27. In response to a question asking about her ability to perform the essential functions of her job as listed in the job description, the form stated that Ms. Covington is "able to work." *Id.* at 3. Regarding accommodations, the form requested "bathroom breaks at a moment's notice as needed throughout the day" and time to go to appointments and have procedures. *Id.* The form did not request "leave from work or a reduced schedule." *Id.* Bi-State provided the requested accommodations.

3

From February 2020 through October 2022, Ms. Covington was absent from work (with or without excuse) 140 times. *See* ECF No. 30-29. From July 2022 through September 2022, Ms. Covington accumulated seven unexcused, unpaid absences. *Id.* at 14–15.

On August 25, 2022, Ms. Covington's supervisor, Jessica Jones, informed her that she only had six remaining hours of PTO. ECF No. 30-15 at 5–6. During a follow up email exchange on September 1, 2022, Ms. Jones told Ms. Covington that taking additional time off would be considered excessive and that any time taken off without accommodation or approved/available PTO time would be considered unauthorized and subject to disciplinary action. *Id.* at 3. On October 17, 2022, Bi-State issued a Notice of FMLA Eligibility Form which stated that Covington was not eligible for FMLA leave because she had not met the FMLA's 1,250 hours worked requirement for the past 12-month period. *See* ECF No. 30-16.

The last day that Ms. Covington reported to work was October 8, 2022. On October 9, 2022, Ms. Jones received notice from a Senior Transit Service Manager that Ms. Covington would be absent that day. On October 13, 2022, Ms. Covington texted Ms. Jones to notify her that she would be absent from work. ECF No. 30-20 at 1. Ms. Jones responded, "OK feel better." *Id.*

On October 14, 2022, Ms. Covington texted Ms. Jones that she would be absent for the rest of the week. *Id.* Ms. Jones requested that Ms. Covington contact

4

her by phone call and told her to feel better. *Id.* Later that day, Ms. Jones asked Ms. Covington to email her medical documentation (i.e., a doctor's note). *Id.* at 2. Ms. Covington responded that the documentation would be faxed to the "disability department."[3] *Id.* Ms. Covington sent the documentation to Bi-State's third-party disability benefits provider, The Standard Insurance Company. Ms. Jones also asked Ms. Covington if she had an expected return date. *Id.* Ms. Covington did not respond. *See id.* The next day, Ms. Jones texted Ms. Covington again to ask if she could provide an expected return date so she could adjust the schedule. *Id.* Again, Ms. Covington did not respond. *See id.*

During the week of October 10, 2022, Ms. Covington applied for long-term disability. When applying, Ms. Covington represented to The Standard that she would not ever be able to work. *See* ECF No. 30-5 at 71:2–6; ECF No. 36-3 at 54:17–25. Bi-State provided Ms. Covington unpaid time off pending the disability determination from The Standard. *See* ECF No. 30-29 at 15. On October 25, 2022, Bi-State received notice that Ms. Covington's disability application was denied by The Standard. On October 26, 2022, Bi-State terminated Ms. Covington's employment. *See* ECF No. 30-21.

On or about November 3, 2022, The Standard reversed its initial disability determination and retroactively awarded Ms. Covington short-term disability

---

[3] Bi-State does not have a disability department.

5

benefits. In March 2023, Ms. Covington's short-term disability benefits ended and she was awarded long-term disability benefits. Ms. Covington is still receiving long-term disability benefits from The Standard and has not sought employment since her termination. *See* ECF No. 30-5 at 8, 91– 92, 116. At the time of her termination, Ms. Covington had $5,681.59 in her 401(k) retirement savings account, to which she made no contributions. ECF No. 30-12 at 7. Ms. Covington withdrew these funds by March 31, 2023. *Id.* at 1.

On December 12, 2022, Ms. Covington filed a charge of discrimination with the EEOC. On September 1, 2023, she received her Notice of Right to Sue. On November 1, 2023, Ms. Covington sued Bi-State in the Circuit Court of the City of St. Louis, Missouri. On December 8, 2023, Bi-State removed the complaint to this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441(a).

Ms. Covington brings two claims against Bi-State. In Count I, Ms. Covington alleges that Bi-State wrongfully terminated her due to disability and failed to engage in an interactive process regarding accommodations in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* In Count II, Ms. Covington alleges that Bi-State terminated her in retaliation for use of an employee benefit plan in violation of Section 510 of the Employee Retirement Security Act, 29 U.S.C. § 1140. Bi-State moves for summary judgment on Ms. Covington's claims.

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Cox v. First Nat'l Bank*, 792 F.3d 936, 938 (8th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). In ruling on a motion for summary judgment, I must "'view the evidence in the light most favorable to the opposing party' and draw all reasonable inferences in favor of that party." *Id.* (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)). A party moving for summary judgment bears the initial burden of informing me of the basis for its motion and identifying the portions of the record it believes show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Upon a properly supported motion, the opposing party "must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Togerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Celotex*, 477 U.S. at 324).

## DISCUSSION

Ms. Covington brings claims against Bi-State under the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Section 510 of the Employment Retirement Security Act ("ERISA"), 29 U.S.C. § 1140. Ms. Covington's claim under the ADA alleges that Bi-State terminated her due to her disability and use of disability benefits, and that Bi-State failed to engage in an

7

interactive process regarding accommodations. Ms. Covington's claim under Section 510 of ERISA alleges that Bi-State terminated her in retaliation for her application for short-term disability benefits.[4] For the reasons discussed below, Bi-State will be granted summary judgment on both claims.

### A. Bi-State did not violate the ADA by terminating Ms. Covington.

The ADA prohibits employers from discriminating against qualified individuals on the basis of disability. 42 U.S.C. § 12112(a). To establish a prima facie case of disability discrimination under the ADA, "a plaintiff must show that [she] (1) has a 'disability' within the meaning of the ADA, (2) is a 'qualified individual' under the ADA, and (3) 'suffered adverse employment action as a result of the disability.'" *Denson v. Steak 'n Shake, Inc.*, 910 F.3d 368, 370 (8th Cir. 2018) (citation omitted).

Bi-State argues that it is entitled to summary judgment on Ms. Covington's ADA claim because Ms. Covington was not a "qualified individual" under the ADA. Alternatively, Bi-State argues that it did not fail to engage in an interactive process regarding accommodations and that it terminated Ms. Covington for non-discriminatory reasons.

---

[4] Ms. Covington's complaint also alleges that Bi-State interfered with her retirement pension benefits in violation of Section 510 of ERISA. *See* ECF No. 7 at 8. However, Ms. Covington is not eligible for any retirement pension benefit, and she withdrew the funds in her 401(k) retirement savings account without interference. As a result, Ms. Covington does not have a claim for interference with retirement benefits. *See* ECF No. 33 at 8 ("Plaintiff voluntarily dismisses claims within her ERISA count related to the vesting of retirement benefits, but those portions only.").

1. <u>Ms. Covington was not a qualified individual under the ADA.</u>

"To be a 'qualified individual' within the meaning of the ADA, an employee must (1) possess the requisite skill, education, experience, and training for [her] position, and (2) be able to perform the essential job functions, with or without reasonable accommodation." *Ehlers v. Univ. of Minnesota*, 34 F.4th 655, 659 (8th Cir. 2022) (citation omitted). Bi-State argues that Ms. Covington was not a "qualified individual" because she could not perform the essential job function of attendance. Ms. Covington bears the burden of proving that she could. *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (citing 42 U.S.C. § 12111(8)).

The Eighth Circuit "has consistently stated that 'regular and reliable attendance is a necessary element of most jobs.'" *Lipp v. Cargill Meat Sols. Corp.*, 911 F.3d 537, 544 (8th Cir. 2018) (citation omitted). Here, the job description for Ms. Covington's position states that "regular, reliable, and predictable attendance is <u>*required*</u>." ECF No. 30-8 (emphasis in original); *see Lipp*, 911 F.3d at 544 (quoting 42 U.S.C. § 12111(8)) (stating that "evidence of whether a function is essential includes . . . [w]ritten job descriptions prepared before advertising or interviewing applicants for the job"). In addition, Ms. Covington signed Bi-State's Manager Attendance Guidelines, which emphasized the importance of attendance. ECF No. 30-9; *see Lipp*, 911 F.3d at 544 (quoting 42 U.S.C. § 12111(8)) (stating that

9

"consideration shall be given to the employer's judgment as to what functions of a job are essential").

In this case, Ms. Covington accumulated 140 absences between February 2020 and October 2022.  *See* ECF No. 30-29.  The last day she reported to work was October 9, 2022.  That same week, Ms. Covington applied for long-term disability and represented to The Standard that she would not ever be able to work.  *See* ECF No. 30-5 at 71:2–6.  In addition, since her termination on October 26, 2022, Ms. Covington has not sought employment or been employed.  *See* ECF No. 30- at 91:15–25, 92:1–5.  Because Ms. Covington was not able to work, she was not able to perform the essential functions of her job.  *See Fall v. Donley*, No. 08-4118-CV-C-NKL, 2010 WL 2773340, at *9 (W.D. Mo. July 13, 2010) ("Where an employer shows that regular work is an essential function of a job, a plaintiff's failure to show she can work defeats her disability discrimination claim."); *see also Irving v. Dierbergs Mkt., Inc.*, No. 4:21-CV-506 RLW, 2023 WL 2536363, at *4, n.2 (E.D. Mo. Mar. 16, 2023) (explaining that the plaintiff was not a "qualified individual" because she represented in an SSI application that she was unable to work).  As a result, I find that Ms. Covington was not a "qualified individual" under the ADA.

> 2. <u>Bi-State did not fail to engage in an interactive process regarding accommodations.</u>

Ms. Covington alleges that Bi-State violated the ADA by failing to engage in any meaningful interactive discussions regarding accommodations.  "To establish

that an employer failed participate in an interactive process, a disabled employee must show: (1) the employer knew about the employee's disability; (2) the employee requested accommodation or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodation; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Ehlers*, 34 F.4th at 661.

Here, Ms. Covington's physician completed an ADA Accommodation Form, which was provided to Bi-State. The form requested "bathroom breaks at a moment's notice as needed throughout the day" and time to go to appointments and have procedures, but it did not request "leave from work or a reduced schedule." *See* ECF No. 30-27 at 3. It is undisputed that Bi-State provided the requested accommodations. *See* ECF No. 34 at ¶ 67.

Ms. Covington argues that Bi-State should have engaged with her about further accommodations after she informed her supervisor that she would be missing work due to a medical condition. But the facts show that after Ms. Covington requested time off, Bi-State contacted her to ask for medical documentation and a timeline for her return. Ms. Covington sent medical documentation not to Bi-State, but to its third-party disability provider (The Standard), and did not respond to her supervisor's inquiry about her expected return date. Regardless, Bi-State provided Ms. Covington unpaid time off pending the disability determination from the

11

Standard.  *See* ECF No. 30-29 at 15.  These facts demonstrate that Bi-State made a good faith effort to accommodate Ms. Covington.

Even if Bi-State did not use good faith efforts, though, Ms. Covington must show that she could have been reasonably accommodated but for Bi-State's lack of good faith.  *See Lipp*, 911 F.3d at 546 (citation omitted) ("An individual requesting an accommodation must 'make a facial showing that reasonable accommodation is possible and that the accommodation will allow her to perform the essential functions of the job.'").  Given that Ms. Covington represented that she was not capable of working, ECF No. 36-3 at 54:17–25, the only available accommodation would have been indefinite unpaid leave.  But this is not a reasonable accommodation.  *See Lipp*, 911 F.3d at 546 (citation omitted) (stating that "the ADA does not require employers to provide an unlimited absentee policy"); *see also Pickens v. Soo Line R.R. Co.*, 264 F.3d 773, 778 (8th Cir. 2001) (finding that plaintiff's suggested accommodation of working "only when he feels like working" was unreasonable as a matter of law).  As a result, I find that Bi-State did not fail to engage in an interactive process regarding accommodations.

3. <u>Bi-State terminated Ms. Covington for non-discriminatory reasons.</u>

Ms. Covington alleges that Bi-State terminated her because of her disability.  However, Bi-State's termination letter states that it terminated Ms. Covington because of excessive unexcused absences and failure to communicate.  ECF No. 30-

12

21. Bi-State argues that this was a legitimate reason for termination unrelated to Ms. Covington's disability.

Ms. Covington ran out of PTO on October 9, 2022 and was not eligible for FMLA leave.  *See* ECF No. 30-15 at 3–6; ECF No. 30-16.  As a result, her absences from October 13, 2022 through October 26, 2022 were unexcused.  In addition, Ms. Covington did not comply with Bi-State's employee handbook, which required her to provide Bi-State with medical documentation and contact her supervisor each day she was absent.  *See* ECF No. 30-6 at 13, 23–24.  Ms. Covington provided medical documentation to The Standard, not to Bi-State, *see* ECF No. 30-5 at 80–81, and did not communicate with Bi-State about her ability to return to work.  *See* ECF No. 30-20.  Despite Ms. Covington's failure to comply with Bi-State's policy, Bi-State waited for The Standard to make a determination on Ms. Covington's disability application before taking action.  After her disability claim was denied, Bi-State terminated her because she was out of available leave.

Ms. Covington offers no evidence other than speculation to support a connection between her disability and her termination.  In September 2022, Ms. Covington's supervisor informed her any additional unauthorized time off would be considered excessive and result in disciplinary action.  *See* ECF No. 30-15 at 3.  Ms. Covington stopped reporting to work after October 9, 2022 and did not communicate with her supervisor.  *See* ECF No. 30-20.  After The Standard denied Ms.

13

Covington's initial disability application, Bi-State believed that she was out of leave and had no medical justification for her absences. Although The Standard ultimately reconsidered Ms. Covington's disability application and granted her benefits, Ms. Covington did not notify Bi-State of this decision. *See Phillips v. Mathews*, 547 F.3d 905, 911 (8th Cir. 2008) (stating that "termination based on even a mistaken, but honestly held, belief concerning leave time is still termination based on a [legitimate] reason"). As a result, I find that Bi-State terminated Ms. Covington for a non-discriminatory reason.

    **B.**    **Bi-State did not violate Section 510 of ERISA by terminating Ms. Covington.**

Under Section 510 of ERISA, an employer may not "discharge a participant in an employee benefit plan 'for exercising any right to which [she] is entitled under the provisions of an employee benefit plan' (retaliation) . . . ." *Manning v. Am. Republic Ins. Co.*, 604 F.3d 1030, 1042 (8th Cir. 2010) (quoting 29 U.S.C. § 1140).

Ms. Covington alleges that she was terminated in retaliation for applying for short-term disability benefits. To establish a prima facie case of ERISA retaliation, Covington must prove: (1) she participated in a statutorily protected activity (i.e., making a reasonable claim for ERISA benefits); (2) she experienced an adverse employment action; and (3) a causal connection existed between the two. *Shrable v. Eaton Corp.*, 695 F.3d 768, 771 (8th Cir. 2012). If Ms. Covington establishes a prima facie case, then Bi-State "must articulate a nondiscriminatory reason for its

14

actions, which shifts the burden back to [Ms. Covington] to prove that the proffered reason is mere pretext." *Id.*

The facts do not support a causal connection between Ms. Covington's application for disability benefits and her termination.  Bi-State did not terminate Ms. Covington until after The Standard denied her disability application.  *See* ECF No. 30-21.  Only after Bi-State learned that Ms. Covington's application was denied, was Ms. Covington's employment terminated as result of her excessive absences, exhausted leave, and failure to communicate with her supervisor.  *See* ECF No. 34-2 at 7:24–25, 8:1–4.  However, when The Standard reversed its initial determination, Bi-State began providing Ms. Covington with short-term disability benefits.  *See* ECF No. 30-5 at 89–91.  In March 2023, Bi-State began providing Ms. Covington with long-term disability benefits, which she is still receiving today.  *See id.* at 8, 116.  Given these facts, it does not appear that Bi-State terminated Ms. Covington in retaliation for applying for disability benefits.

Even if these facts do establish a prima facie case of ERISA retaliation, Bi-State has articulated a legitimate, nondiscriminatory reason for its action.  As discussed in Section A.3, when Bi-State terminated Ms. Covington, she had been absent from work for more than two weeks, she had exhausted her PTO, she was not eligible for FMLA, and she had been denied disability benefits.  In addition, she was previously informed that further unexcused absences would be "subject to

15

disciplinary action." ECF No. 30-15 at 3. Despite this, Ms. Covington did not comply with Bi-State's policies regarding communication with her supervisor. *Compare* ECF No. 30-6 at 13, 23–24, *with* ECF No. 30-20. Ms. Covington has not presented any facts showing that these reasons are pretextual. As a result, I find that Bi-State did not terminate her in retaliation for applying for disability benefits.

## CONCLUSION

After careful review of the facts and law relevant to this issue, I do not consider there to be a genuine issue of material fact as to whether Bi-State violated the ADA by terminating Ms. Covington due to her disability and failing to engage in an interactive process regarding accommodations, or whether Bi-State violated Section 510 of ERISA by terminating Ms. Covington in retaliation for use of an employee benefit plan.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Bi-State Development Agency's motion for summary judgment [28] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 9th day of April 2025.